CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 08, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal Action No. 7:20-cr-00032 |
| v. | ) |
| | ) |
| JOSEPH COQUIA MARTIN, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant/Petitioner | ) |

## MEMORANDUM OPINION

Joseph Coquia Martin, a federal inmate proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 111. The government moved to dismiss Martin's motion, arguing that he is not entitled to relief. ECF No. 119. Martin was given an opportunity to respond to the government's motion, ECF Nos. 123, 124, but did not do so. After reviewing the briefing and the record, the court **DENIES** Martin's motion to vacate, set aside, or correct his sentence. Also pending is Martin's motion for "COVID credits." ECF No. 122. As the court is unaware of any means by which Martin could receive time credit toward his sentence based on the COVID-19 pandemic, his motion is **DENIED**.

### I. Background

This matter arose from incidents that occurred in May 2020. According to the Agreed Statement of Facts (SOF), ECF No. 74, federal agents used a confidential informant to purchase controlled substances from Martin's codefendant William Ramey-Woodard. The investigation and the actions of the informant ultimately resulted in a search warrant on properties associated with Ramey-Woodard and Ramey-Woodard's arrest on a federal

complaint. Id. at 1. While Ramey-Woodard was incarcerated, he and defendant Martin began having coded telephone and email conversations in which they discussed the informant's identity, where he lived, and whether he ought to suffer consequences because of his cooperation with law enforcement. Because the conversations occurred while Ramey-Woodard was incarcerated, they were recorded by the jail. Id.

On May 31, 2020, Martin went to the informant's residence and shot a firearm once at point blank range at the informant in an attempt to kill him because of his assistance to federal authorities in the investigation of Ramey-Woodard. Id. The single shot from Martin's weapon grazed the informant's neck and stunned him, causing him to fall to the floor. Martin left the informant's residence, and the informant called 911. Id. at 1–2. The informant did not seek medical care. Pre-Sentence Investigation Report (PSR), ECF No. 96 at 22.

On July 16, 2020, Martin, along with one codefendant, was named in a 10-count superseding indictment alleging offenses related to distribution of fentanyl and heroin, attempting to kill a confidential informant, and being a felon in possession of a firearm. Superseding Indictment, ECF No. 26. On January 31, 2022, Martin entered into a Rule 11 plea agreement in which he pled guilty to attempting to kill a person assisting an officer or employee of the United States in the performance of that officer or employee's official duties, and on account of that assistance, in violation of 18 U.S.C. § 1114(3) (Count Seven); and knowingly possessing a firearm in furtherance of a crime of violence for which he could be prosecuted in a court of the United States, as set forth in Count Seven, in violation of 18 U.S.C. § 924(c) (Count Eight). Plea Agreement, ECF No. 73 at 1.

On August 22, 2022, the court sentenced Martin to 120 months on Count Seven and to a consecutive sentence of 120 months on Count 8, for a total of 240 months. J., ECF No. 98. Martin did not file a direct appeal but filed the instant § 2255 petition on April 6, 2023.

## II. Analysis

In support of his motion under § 2255, Martin alleges that his attorney provided ineffective assistance of counsel in three respects: (1) his attorney failed to object to the allegation that the informant was shot in the eye; (2) his attorney did not clarify the charges to which Martin was pleading guilty and allowed him to proceed to sentencing "with the anticipation of obtaining clarity" which he did not get; and (3) his attorney tried to convince Martin that he could not file a motion alleging ineffective assistance of counsel. As discussed below, Martin's contentions are belied by the record in this case.

### A. 18 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

"The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions, or the [§ 2255 Rules], may be applied to" § 2255 proceedings. Rules Governing Section 2255 Proceedings, Rule 12. The court may dismiss a § 2255 motion without a hearing when the motion, any attached exhibits, and the record of prior proceedings conclusively show that the moving party is not entitled to relief. United States v. Renrick, No. 6:11-CR-00338-JMC-16, 2019 WL 4140934, at *2 (D.S.C. Aug. 30, 2019) (citing 28 U.S.C. § 2255(b)).

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." United States v. Poindexter, 492 F.3d 263, 267 (4th Cir. 2007). The court does not weigh the evidence but reviews the facts in the light most favorable to the petitioner and determines whether there is a genuine issue of fact. Lewis v. United States, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *3 (E.D.N.C. May 20, 2015) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "Permissible inferences must still be within the range of reasonable probability, ... and it is the duty of the court to [grant summary judgment] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Id. (citing Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted)).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show

both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Mayfield, 320 F. App'x 190, 191 (4th Cir. 2009) (applying prejudice standard to claim of ineffective assistance at sentencing.)

### (1) Injury to the Informant

Martin asserts that his attorney erred by not objecting to language in the plea agreement that the victim was shot in the eye or otherwise sustained a physical injury. The plea agreement contained the following language:

> I am aware that the victim in this case is alleging the loss of vision in one of his eyes as a result of my actions. I reserve the right to contest, at the time of sentencing, the scope and nature of any injury to the victim, and to contest how that would affect the calculation of my sentencing guidelines.

Id. at 4.

The United States Probation Office prepared a PSR, which was revised several times. In the initial PSR, as part of the offense level calculation, the probation officer proposed a 4-level increase pursuant to USSG § 2A2.1(b)(1) because the victim sustained permanent or life-threatening bodily injury. PSR prepared on June 30, 2022, ECF No. 88 ¶ 18. Martin's counsel objected to the 4-level increase and the probation officer deleted it, noting that after speaking with the United States Attorney's Office, the enhancement could not be supported by medical records as the victim had refused to get a formal medical diagnosis. PSR revised on August 18, 2022, ECF No. 96 at 22. At the sentencing hearing, the court acknowledged that the 4-level enhancement was removed from the PSR and said that no allegation regarding a vision impairment would be considered. Sent. Hr'g Tr., ECF No. 116 at 3, 8.

Accordingly, the record in the case shows that Martin's attorney successfully objected to 4-level increase in the PSR based on injury to the victim and Martin's sentence was not increased on that basis. Therefore, Martin's attorney did not provide ineffective assistance of counsel at sentencing when he did not object to the language in the plea agreement regarding the previously alleged eye injury, because the disputed eye injury was not considered by the court at sentencing.

### (2) Voluntariness of Guilty Plea

"[A] guilty plea is a grave and solemn act to be accepted only with care and discernment." Brady v. United States, 397 U.S. 742, 748 (1970). Because guilty pleas waive the constitutional right to a trial, they "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely

consequences." Id. "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

In Blackledge v. Allison, 431 U.S. 63, 71 (1977), the Supreme Court noted that guilty pleas and plea bargains are important components of this country's criminal justice system and properly administered, they benefit all concerned. Representations of the defendant, his lawyer, and the prosecutor at a plea hearing, as well as findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73–74. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74 (citations omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005).

Martin asserts that his attorney allowed him to plead guilty without clarifying the charges to which he was pleading, and further asserts that the attorney allowed Martin to proceed to sentencing with the anticipation of "obtaining clarity" which he did not receive. The court interprets this allegation as a claim by Martin that his guilty plea was not knowing and voluntary.

7

Martin pled guilty pursuant to a written plea agreement. He initialed each page of the agreement and signed the last page, indicating that he had read it, discussed it with his attorney, and agreed to its terms. Plea Agreement, ECF No. 73. On the first two pages of the plea agreement, it states that Martin was pleading guilty to Counts Seven and Eight of the superseding indictment and sets out the charges and the minimum and maximum punishments for each count. Id. at 1–2.

At the guilty plea hearing, the court read the language regarding Counts Seven and Eight into the record. Guilty Plea Hr'g Tr., ECF No. 118 at 4. Martin replied affirmatively when the court asked him if he had read the indictment and in particular Counts Seven and Eight, discussed the charges with his attorney, and understood the charges he was facing. Id. at 11. Martin also said that he had a copy of the plea agreement in his possession for "about a week." He stated that he had read and initialed every page and signed it indicating that he agreed with its terms. Id. at 11–12.

The court then asked the prosecutor to explain the essential terms of the plea agreement and the prosecutor explained, among other things, that Martin was pleading guilty to Counts Seven and Eight of the indictment and that the remaining counts would be dismissed at sentencing. Id. at 13. Martin stated that he understood the terms of the plea agreement. Id. at 15–16. The prosecutor also explained the maximum penalties on the counts. Id. at 16–17. When asked if he had any questions about the plea agreement, Martin said he did not. Id. at 17–18. Through his attorney, Martin indicated that he would argue at sentencing that the victim did not suffer a physical injury. Id. at 19.

At the sentencing hearing, Martin stated that he remained fully satisfied with the advice and representation of his counsel. Sent. Hr'g Tr., ECF No. 116 at 2. The court summarized the charges and statutory punishment ranges in Counts Seven and Eight. Id. at 2–3. Martin addressed the court on his own behalf and did not raise any question about the charges on which he had been convicted. Id. at 17–18.

Based on this record, the court finds that Martin's counsel, as well as the court and the prosecutor, adequately explained the charges to which Martin was pleading guilty. The court further finds, based on Martin's sworn statements at the guilty plea hearing, that Martin understood the charges to which he pled guilty. Martin's conclusory assertion to the contrary is unsupported by the record. Accordingly, the court finds that Martin's attorney provided effective assistance of counsel when he advised Martin of the charges to which he was pleading guilty.

### (3) Right to File § 2255 Motion

Finally, Martin argues that his attorney tried to convince him that he could not file a § 2255 motion to vacate his sentence based on ineffective assistance of counsel. However, the plea agreement made clear that Martin retained the right the file a habeas motion based on ineffective assistance of counsel, Plea Agreement, ECF No. 73 at 8, and the prosecutor explained at the guilty plea hearing that pursuant to the plea agreement, Martin was "giving up his right of collateral attack except as to matters involving ineffective assistance of counsel." Guilty Plea Hr'g Tr., ECF No. 118 at 15. As set forth above, Martin agreed that he understood the terms of the plea agreement. Id. at 15–16. The court also explained to Martin that he was giving up his right to collaterally attack his sentence, "except for any claim that

9

your lawyer has been in some respect constitutionally ineffective." Id. at 30. Martin said he understood and wanted to proceed with the guilty plea. Id. at 30–31.

It is clear from the record that Martin understood that he had the right to file a motion for ineffective assistance of counsel. Even if his attorney told him at some point that he did not have that right, Martin cannot show prejudice as he disregarded the attorney's advice and timely filed this motion.

As set forth above, Martin has failed to show that his attorney provided ineffective assistance of counsel in relation to his guilty plea or sentencing, or in advising him of his post-conviction rights. Accordingly, the court **DENIES** Martin's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 111, and **GRANTS** the government's motion to dismiss, ECF No. 119.

### III. COVID Credits

Martin also filed a motion in which he states that he was arrested on June 1, 2020, and asks the court for "[his] credits for the Pandemic." He also said that he was the first person to be diagnosed with COVID-19 at the Roanoke City Jail and asked whether there are "any additional credits to earn during the Pandemic." He asserts that "COVID credits" are for people who were serving time or "fighting their case" during the pandemic. Mot., ECF No. 122.

The court is unaware of any sentence credits that can be awarded because of the pandemic. If Martin is seeking a "compassionate release" sentence reduction based on

10

COVID-19,[1] he has not alleged any grounds on which the court could grant such relief. Accordingly, Martin's motion for "COVID credits," ECF No. 122, is **DENIED**.

## IV. Conclusion

For the reasons stated above, the court **DENIES** Martin's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 111, and **GRANTS** the government's motion to dismiss, ECF No. 119. Because Martin has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

The court **DENIES** Martin's motion for "COVID credits," ECF No. 122.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: May 8, 2024

Michael F. Urbanski
Chief United States District Judge

---

[1] See 18 U.S.C. § 3582(c)(1).

11